UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 04-50140 |
| | CIVIL NO. 08-1448 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| THOMAS CHRISTIE | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before this Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Record Document 81), filed on behalf of the Petitioner, Thomas Christie ("Christie"). Christie seeks to have his sentence vacated based on (1) the government's alleged breach of the guilty plea agreement and (2) ineffective assistance of counsel. Id. For the reasons discussed herein, Christie's motion is **DENIED**.

**FACTUAL BACKGROUND**[1]

In March 2004, James Podboy ("Podboy"), a special agent with Immigration and Customs Enforcement of the Department of Homeland Security, presented an application for a search warrant to a federal magistrate judge. In the affidavit submitted in support of the application, Podboy described the government's investigation that revealed that Christie had purchased access to Internet web sites containing child pornography. Podboy stated in his affidavit that he had probable cause to believe that evidence of child pornography would be found at Christie's residence located at 3418 Seminole Drive, Shreveport,

---

[1] See United States v. Christie, 208 Fed. Appx. 332 (5th Cir. 2006).

Louisiana 71107. An attachment to the application described 3418 Seminole Drive as "a single family, one level home" and detailed the exterior of the premises.

Podboy's affidavit further stated that he had checked Louisiana motor vehicle records to verify that Christie lived at 3418 Seminole Drive and that surveillance of the premises in the previous month had revealed two vehicles registered to Christie parked in the driveway. Podboy averred that the cable company records showed Christie was receiving high speed Internet service at 3418 Seminole Drive using the same email address contained in transactional information discovered in the government's underlying investigation. Podboy also attested that a criminal history check revealed that Christie had prior convictions for oral sexual penetration of a child less than thirteen years old and interstate transportation of child pornography.

On March 25, 2004, the magistrate judge signed a search warrant permitting police to search and seize, inter alia, computer equipment, data and memory storage devices, computer files, photographs, or any other visual depictions of minors engaging in sexually explicit conduct, found in the "[r]esidence of Thomas Christie at 3418 Seminole Drive, Shreveport, Louisiana 71107." The following morning, agents executed the search warrant. Instead of entering by force, agents called Christie who returned home and, after being told that the agents had a search warrant, opened the garage door and allowed the agents to enter the residence through a door in the garage leading to the interior of the home. Once inside, agents seized three hard drives from two computers, all of which contained child pornography. Two of the hard drives were from a computer located in the living room/guest bedroom area; the third hard drive was from a computer located in an interior room that

was used as a business office. On October 13, 2004, Christie was indicted on one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).[2]

On June 3, 2005, Christie moved to suppress the evidence of child pornography discovered on the computer located in the business office within his residence. In support of his motion, Christie testified that the office was for Creative Home Improvement Services ("CHIS"), a construction business in which he was a fifty-percent owner. He testified that the business office had two entrances, one exterior door in the garage and one interior door in the residence, both of which were marked with placards identifying the room as a business office. He conceded that the sign on the exterior door in the garage "probably fell off" because it was secured with Scotch tape "and it does fall down." He also admitted that if the interior door was open, agents would not have seen the business placard on the outside of the interior door because the door opens against the wall. Christie testified, however, that there were other indications that a business was being conducted in his residence, including a trailer with a sign on it parked outside the residence, vehicles with signs on them parked in the driveway, and construction-related tools and equipment located on the side of the house.

In opposition to Christie's motion to suppress, the government presented Agent Podboy. Podboy testified that he entered the residence directly through the garage and did not recall seeing the exterior door leading from the garage directly into the business office. He also testified that he did not see any type of business sign inside the garage. As for the

---

[2]There was also a count in the indictment alleging forfeitures of certain property, but it was later dismissed by the government pursuant to Christie's plea agreement.

interior door in the residence displaying a business sign, Podboy testified that the door was open and unlocked. When questioned about the exterior indications of a business being operated out of the residence, including vehicles displaying the business logo and business equipment and a trailer in the yard, Podboy responded that he was not aware there was a business inside the residence.

On August 12, 2005, the magistrate judge issued a Report and Recommendation denying the motion to suppress. The magistrate judge found, as an initial matter, that the office was not a separate structure but was simply a room within the same structure. He further found that if the garage door to the residence is pulled down in the closed position, as it was when the agents conducted surveillance of the property prior to the search, "there is nothing apparent from viewing the residence which would indicate to anyone that a construction company is operated from an office within the residence." The magistrate judge rejected the evidence introduced by Christie that there were indications of a business from the exterior of the home. He found that none of the equipment was inconsistent with that found in other yards in the area. With regard to the vehicles, he found that "many employees bring their work-related vehicles home in the evenings, and the mere presence of a vehicle or small flatbed trailer bearing a company's designation would not necessarily lead a reasonable agent to believe that a business is being conducted from a home office within the residence."

The magistrate judge made several findings of fact related to Christie's argument that the agents knew or should have known there was a business office once they were inside the garage of the residence. First, he found that "[i]f there was a sign on that exterior door [from the garage into the home office] at any time prior to the search, the sign was

removed or had fallen off (as it was prone to do) before the search." Second, he found that the sign on the interior door leading into the office "is not visible if that interior door is left open, and there is no evidence in this case that the door was closed." Finally, he found that "the videotape of the home office at the time of the search shows that the layout and items located in the home office are similar to many spare rooms in homes that contain computer desks, recliners, televisions, family photographs and the like." He concluded that even if the interior door to the office was closed and locked and even if the agents saw the business sign, "a search warrant supported by probable cause to search the residence for child pornography included authorization to enter and search that room." On September 27, 2005, the district court concurred with the findings of the magistrate judge and denied Christie's motion to suppress.

## PROCEDURAL HISTORY

On August 29, 2005, Christie entered a guilty plea conditioned on his right to appeal the district court's denial of his motion to suppress evidence from the business office. [Record Document 47].

On November 30, 2005, pursuant to the conditional plea agreement between the government and defendant, Christie was sentenced to a term of 120 months imprisonment. Upon his release from confinement, the Court ordered Christie be placed on supervised release for a period of five years. [Record Document 58].

A panel of the Fifth Circuit affirmed the district court's denial of Christie's motion to suppress and held "that the agents did not exceed the scope of the warrant by searching the CHIS office." [Record Document 72 at 9].

On September 30, 2008, Christie filed a Motion to Vacate, Correct or Set Aside Sentence Pursuant to 28 U.S.C. § 2255. [Record Document 81]. Christie claims his sentence should be vacated because:

>    a.   Petitioner's Sixth Amendment Was Violated When Attorney Flowers Erroneously Advised Petitioner to Enter a Conditional Plea Without First Researching the Law and Fact Under Federal Rules of Criminal Procedure, Rule 11(a)(2);
>    b.   Petitioner's Guilty Plea Was [Not] Intelligently, Voluntarily, and Knowingly Entered or Entered Because of the Coercive Nature Applied by Attorney Flowers and the Government;
>    c.   The Government Breached the Plea Agreement When It Returned the Two Computers to Petitioner Damaged/Inoperable/Broken;
>    d.   Petitioner's Fourth, Fifth and Sixth Amendments Were Violated By Attorney Flowers['] Failure to Investigate the Validity of the Search Warrant and Affidavit in Support;
>    e.   Petitioner was denied counsel on direct appeal when attorney Christopher A. Aberle failed to timely present the issue under Federal Rules of Criminal Procedure Rule 11(a)(2) violation in his initial brief.

See Record Document 81-1.

## LAW AND ANALYSIS

**A.   Claims Not Cognizable Under 28 U.S.C. § 2255**

After conviction and exhaustion of a defendant's right to appeal, the Court is "entitled to presume that the defendant stands fairly and finally convicted." United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991), quoting United States v. Frady, 456 U.S. 152, 164, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). "Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless post conviction collateral attacks. To the contrary, a final

judgment commands respect." Frady, 456 U.S. at 164-65, 102 S.Ct. at 1593. Consequently, issues that can be presented in a motion filed under 28 U.S.C. § 2255 are limited. A defendant can challenge a final conviction only on issues of constitutional or jurisdictional magnitude. Shaid, 937 F.2d at 232. As the Fifth Circuit has stated:

> Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.

U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (citations omitted).

Even if a defendant has issues that are constitutional or jurisdictional in nature, he may be procedurally barred from raising them. In order to raise an issue for the first time on collateral review, a defendant must show both "cause" for his procedural default and "actual prejudice" resulting from the error. Id. at 168. To establish "cause," defendant must show some external impediment prevented him from raising the claim on direct appeal. See U.S. v. Flores, 981 F.2d 231, 235 (5th Cir. 1993). In order to meet the "actual prejudice" test, he must demonstrate not just the possibility of prejudice, "but an actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." Shaid, 937 F.2d at 233.

A narrow exception to the "cause and actual prejudice" requirement exists in extraordinary cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 232. The Supreme Court has emphasized that this exception is limited to only those cases involving "manifest miscarriages of injustice" that would result in the continued incarceration of an innocent

person.  Id., citing Smith v. Murray, 477 U.S. 527, 537, 106 S.Ct. 2661, 2649, 91 L.Ed.2d 434 (1986).  In a case such as this one, where the petitioner has entered a plea of guilty, he must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998), citing Schlup v. Delo, 513 U.S. 298, 327-28, 115 S.Ct. 851, 867-68, 130 L.Ed.2d 808 (1995).  Christie does not contend that he is "actually innocent" of the crime.  Thus, the Court need only determine whether he alleges claims that are constitutional or jurisdictional in nature and whether he has established the requisite "cause and actual prejudice" allowing him to proceed with those claims under section 2255.

Christie's claims fall into two broad categories: (1) ineffective assistance of counsel and (2) the government breached the conditional plea agreement.

**B.      Ineffective Assistance of Counsel**

The general ruling prohibiting a defendant from raising claims on collateral review absent "cause" and "actual prejudice" does not apply to claims of ineffective assistance of counsel.  Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003).  The procedural-default rule is a doctrine employed by the courts "to conserve judicial resources and to respect the law's important interest in the finality of judgments." Id.  Requiring a criminal defendant to bring ineffective assistance of counsel claims on a direct appeal promotes neither of these objectives.  Moreover, a claim of ineffective assistance of counsel cannot be properly resolved on appeal because there has been no opportunity to develop the record on the merits of these allegations.  United States v. Alanis, 88 Fed. Appx. 15, 19 (5th Cir. 2004).  Thus, a criminal defendant is properly

permitted to bring ineffective assistance of counsel claims in a collateral proceeding under § 2255, regardless of whether such claims could have been raised on direct appeal.  Id.

To prevail on his claims of ineffective assistance of counsel, Christie must prove (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that his counsel's ineffective assistance was prejudicial.  See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); Bryant v. Scott, 28 F.3d 1411, 1414-1415 (5th Cir. 1994).  Under the first prong of the Strickland analysis, Christie must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id., 466 U.S. at 687, 104 S.Ct. at 2064.  The court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy.  The defendant may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance."  Id., 466 U.S. at 690, 104 S.Ct. at 2066.

Under the second prong of the Strickland test, Christie must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different."  Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.  In the context of a guilty plea, prejudice is present if there is a reasonable probability that, but for counsel's errors, the defendant would not have entered a guilty plea and would have insisted on a trial.  See Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); Theriot v. Whitley, 18 F.3d 311, 313 (5th Cir. 1994).  However, regardless of whether the petitioner is able to

demonstrate ineffective assistance of counsel, "the conviction [and sentence] should be upheld if the plea was voluntary."[3]  Deville v. Whitley, 21 F.3d 654, 659 (5th Cir. 1994).

### 1. The Effect of the Conditional Plea Agreement

> Thomas Christie's contention is that Attorney Peter Reichman Flowers; [sic] erroneous advice to enter a "Conditional Plea of Guilty" to Count 1 of the Indictment without reserving the right to appeal a "NON-CASE-DISPOSITIVE" pretrail [sic] ruling violated his Sixth Amendment Right to effective assistance of counsel.  The "Plea Agreement" which purports to show that Petitioner Christie avers that a guilty plea that purports to reserve the right to appeal a non-case-dispositive pretrial ruling is invalid and must be vacated.

[Record Document 81-1 at 4].

The Fifth Circuit has spoken to conditional pleas holding that:

> [c]onditional pleas may be permitted, and this is the usual procedural avenue for preserving the defendant's objection to a dispositive pretrial ruling and obviating the need for a full trial. But conditions to a plea are not to be implied. Conditional pleas must be made in writing, consented to by the prosecution, and approved by the court. See FED.R.CRIM.P. 11(a)(2). Furthermore, the plea agreement must explicitly designate particular issues intended to be preserved for appeal. See United States v. Bell, 966 F.2d 914, 916 (5th Cir.1992); United States v. Hausman, 894 F.2d 686, 689 (5th Cir.1990). The requirements of consent by the government and approval by the court mean that there is no absolute right to enter a conditional guilty plea, and neither the prosecution nor the court has any duty to advise a defendant of the availability of such a procedure. See, e.g., Bell, 966 F.2d at 916; United States v. Daniel, 866 F.2d 749, 751 (5th Cir.1989).
> This Court has, in appropriate circumstances, relaxed the technical conditional plea requirements of Rule 11(a)(2).

---

[3]"A voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant." United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000), citing United States v. Smallwood, 920 F.2d 1231, 1240 (5th Cir. 1991).  "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary."

> Harmless Rule 11 violations are expressly excused by the Rule, which provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." FED.R.CRIM.P. 11(h). We can excuse variances from Rule 11(a)(2) when the spirit of that rule has been fulfilled by a clear indication on the record of the defendant's intention to plead conditionally, a clear indication on the record of the defendant's intention to appeal particular pretrial rulings, and the acquiescence of both the prosecution and the court. See, e.g., Bell, 966 F.2d at 916.

United States v. Wise, 179 F.3d 184, 186-87 (5th Cir. 1999). Recently the Fifth Circuit has affirmed this approach in United States v. Stevens stating

> Rule 11(h) allows for variance from Rule 11(a)(2)'s technical conditional plea requirements when the variance "does not affect substantial rights." FED.R.CRIM.P. 11(h). We have excused harmless variances under Rule 11(h) where "the record clearly indicates that the defendant intended to enter a conditional guilty plea, that the defendant expressed the intention to appeal a particular pretrial ruling, and that neither the government nor the district court opposed such a plea." United States v. Santiago, 410 F.3d 193, 197 (5th Cir.2005), cert. denied, 547 U.S. 1022, 126 S.Ct. 1565, 164 L.Ed.2d 303 (2006); accord Wise, 179 F.3d at 187.

487 F.3d 232, 238 (5th Cir. 2007).

Petitioner has presented to this Court cases from other circuits where the courts have completely invalidated a conditional plea agreement because it contained a non-dispositive case pretrial ruling. See United States v. Bundy, 392 F.3d 641, 647 (4th Cir. 2005). This Court is not bound by rulings from other circuits. It is apparent that the Fifth Circuit takes a harmless error approach in instances such as this. During the negotiations for Petitioner's plea agreement, Petitioner bargained for a conditional plea based upon his right to appeal the Court's ruling on his motion to suppress. Petitioner further bargained for the right to have his plea vacated if the Fifth Circuit reversed the ruling on the motion

to suppress. The government agreed to this condition. The government and the Court agreed to allow the defendant to enter into this guilty plea. This Court finds that the guilty plea was conditioned on a non-case-dispositive pretrial ruling, and if this is error, this is merely harmless error. Had Petitioner succeeded in his direct appeal, his guilty plea would have been vacated as bargained for and agreed upon. See Record Document 83-6 at 6 ("The government concedes that if Christie prevails on appeal on the suppression issue, Rule 11(a)(2) gives him the right to withdraw his guilty plea and proceed to trial on the unchallenged evidence."). However, that is not what happened. The Fifth Circuit affirmed the district court's ruling on the motion to suppress.

Petitioner strenuously argues that counsel was ineffective for allowing him to enter a conditional plea based on a non-case-dispositive pretrial motion. This Court disagrees.

### 2. Adequate Investigation of the Validity of the Search Warrant and Affidavit in Support

Here, Christie alleges that his attorney helped "the government to create [its] case against Petitioner" and in so doing failed to properly investigate the validity of the search warrant and the affidavit in support used to search his home and office. [Record Document 81-1 at 18]. Petitioner now argues that someone else placed the images on his hard drive. This is in direct contradiction to his sworn testimony during his guilty plea. This Court has reviewed the record. Petitioner has made numerous attempts to get copies of the search warrant and affidavit in support. In Petitioner's mind this is the "smoking gun" that will ensure his release from prison. For the record, a magistrate judge, a district judge and a panel of the Fifth Circuit Court of Appeals have all reviewed the search warrant and affidavit in support. They have all independently found that the search warrant is valid. Absent

some evidence in the record—beyond the mere conclusory allegations in his *pro se* brief—Christie's barefaced accusations regarding his attorney's alleged inadequate investigation must be disregarded by the Court. See Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 135 (1977) (the petitioner must provide more than "conclusory allegations unsupported by specifics"); Ross v. Estelle, 694 F.2d 1008, 1011 (5th Cir. 1983) ("a court cannot consider a habeas petitioner's bald assertions on a critical issues in his *pro se* petition..., unsupported and unsupportable by anything else contained the record, to be of probative evidentiary value"); see also, Smallwood v. Johnson, 73 F.3d 1343, 1351 (5th Cir. 1996) (conclusory allegations "do not constitute the kind of evidence necessary to raise a fact issue sufficient to warrant an evidentiary hearing").

### 3. Ineffective Assistance of Appellate Counsel

Petitioner contends "that Attorney Aberle['s] performance in representing him was so deficient that it violated his Sixth Amendment right on direct appeal when [he] failed to present the issued [sic] of the validity of the Conditional Guilty Plea in his original brief." [Record Document 81-1 at 20]. For argument's sake, this Court will assume that appellate counsel's failure to brief the issue of the validity of the Conditional Guilty Plea rises to the level of deficient conduct. Appellate counsel's December 21, 2006 letter to Petitioner attests to this when he states "you will also want to argue that appellate counsel (I don't mind) was ineffective for failing to raise the issue in the original brief." [Record Document 81-1 at 58].

The Strickland standard applies to claims of ineffective assistance of counsel on appeal and requires showing of both a failure of counsel to perform according to reasonable professional standards and prejudice to the defendant. Wicker v. McCotter, 783

F.2d 487, 497 (5th Cir. 1986). "This reasonableness standard requires counsel 'to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." United States v. Phillips, 210 F.3d 345, 348 (5th Cir. 2000)(quoting United States v. Williamson, 183 F.3d 458, 462-63 (5th Cir. 1999). A petitioner suffers prejudice if, but for the deficient performance, the outcome of the trial– or in this case, the appeal– would have been different." Amador v. Quarterman, 458 F.3d 397, 411 (5th Cir. 2006). Had the appellate counsel briefed this issue, it appears highly unlikely that the Fifth Circuit would have invalidated the guilty plea. However, even assuming that they had, Petitioner would have found himself in the exact same position. Petitioner forgets that the government seized two computers in two different rooms in his home and office. *Both* computers contained child pornography and Petitioner *only* filed pretrial motions to suppress the seizure of *one* computer. Upon review of the whole record, this Court cannot find any prejudice in appellate counsel's actions. Therefore, this claim must fail.

### 4. Voluntariness of the Guilty Plea

Petitioner argues:

> [a]fter this Honorable Court affirmed the Magistrate Judge's Report and Recommendation by denying Petitioner's motion to suppress, Attorney Flowers immediately began to coerce Mr. Christie to enter a conditional plea of Guilty by: (a) misinforming him that under Rule 11(a)(2) Guilty Plea, he can guarantee that the denial of his motion to suppress by the district court would be overturned and that the Fifth Circuit will vacate the invalid guilty plea; (b) by misinforming petitioner that if he did not accept the plea agreement, the government will bring additional charges and also bring charges against Petitioner's family members; (c) by misleading the petitioner to

> believe that [he] Attorney Flowers will be representing petitioner on direct appeal; and by misleading Petitioner into believing that he was getting his computer back, unbroken and operable.

[Record Document 81-1 at 9 (internal citations omitted)].

In order for a guilty plea to be voluntary, the defendant must understand, *inter alia*, the consequences of his plea, including any mandatory minimum sentence. See United States v. Still, 102 F.3d 118, 122-23 (5th Cir.1996); Fed.R.Crim.P. 11(b)(1)(I). A defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Thus, a defendant ordinarily may not refute his sworn testimony at a plea hearing while under oath. United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir.1998). Further, official documents, such as a written plea agreement, are "entitled to a presumption of regularity and are accorded great evidentiary weight." Hobbs v. Blackburn, 752 F.2d 1079, 1081 (5th Cir.1985). Christie affirmed at the plea hearing that he entered into the guilty plea voluntarily. The Magistrate Judge even asked him this question twice to ensure that there was no confusion. He affirmed. He further attested under oath that he was not coerced into pleading guilty and that he was very satisfied with his attorney's performance. The written plea agreement, which Christie verified having read and understood, likewise made clear that the plea agreement was "entered into freely, knowingly, and voluntarily with no threats or coercion, after due consultation with his attorney." [Record Document 48 at 4]. Further, Christie signed an Understanding fo Maximum of Penalty and Constitutional Rights which stated "I further state that my plea in this matter is free and voluntary and that it has been made without any threats or inducements (except the plea agreement) whatsoever from anyone associated with the State or United States Government *or my attorney* and

that the only reason I am pleading guilty is that I am in fact guilty as charged." [Record Document 48-1 at 2 (emphasis added)].

With respect to an evidentiary hearing, a court should hold a hearing and make findings of fact, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." § 2255(b). In the context of a claim that a plea was rendered involuntary by promises of counsel, the Fifth Circuit has held:

> If the defendant produces independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties, [he] is entitled to an evidentiary hearing on the issue. If, however, the defendant's showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary.

Cervantes, 132 F.3d at 1110 (internal citations omitted).

Petitioner has utterly failed to carry his burden of proving coercion. The statements that Petitioner attributes to his attorney appear to this Court to be a blunt assessment of the consequences that Petitioner would face if he did not plead guilty. The Court can find no coercion in counsel laying out the possible consequences to Petitioner (and his family) if he chose not to plead guilty. Counsel was neither ineffective nor coercive.

**C. Breach of the Guilty Plea Agreement**

A guilty plea based on a breached plea agreement is subject to collateral attack in a section 2255 motion. See United States v. Cates, 952 F.2d 149, 151 (5th Cir.1992). If the government agrees to a plea agreement, it must strictly adhere to the promises and conditions included in the agreement. See United States v. Munoz, 408 F.3d 222, 226 (5th Cir. 2005) (citations omitted). The defendant bears the burden of proving the underlying

facts resulting in the breach by a preponderance of the evidence. See United States v. Lewis, 476 F.3d 369, 387 (5th Cir. 2007) (citations omitted). To determine whether a plea agreement has been breached, the court considers whether the government's conduct is consistent with a reasonable understanding of the plea agreement by the defendant. See id. at 387-88 (citations and quotations omitted).

Christie argues that "the government breached the plea agreement when it returned the two computers to Petitioner damaged/inoperable/broken." [Record Document 81-1 at 13]. In the plea agreement, the government agreed to drop the forfeiture count of his indictment and return his computers. Id. According to Christie, "[i]n the middle of August 2007, Petitioner's wife, Marie Luz Christie was instructed by Attorney Blackmon to contact Leslie Dillman at Fines, Penalties, and Forfeiture Office in regards to returning the two computers as was promised by the government . . . When Petitioner's wife made it home and set up the computers, she discovered they were broken/inoperable." Id. Christie argues that because of this breach he is entitled to withdraw his guilty plea.

This Court disagrees. This Court has reviewed the record. The government agreed to return Petitioner's computers. It is undisputed that these computers contained child pornography. The government fulfilled its obligations by returning the computers to Petitioner. There was no discussion of ensuring that the computers would be in working order. Certainly the hard disk drives and other internal memory storage features should have been removed and/or destroyed because they contained child pornography. The government is not obligated to replace components removed from Petitioner's computer under these circumstances. Regardless, this Court agrees with the government's contention that Petitioner is procedurally barred from raising this claim because he has

failed to prove cause and prejudice as a result of the government returning his computers in an inoperable fashion.

## CONCLUSION[4]

The Court finds Christie has failed to establish that he received ineffective assistance of counsel and that the government breached the plea agreement. Accordingly, Christie's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Record Document 81] is hereby **DENIED.**

Pursuant to Rule 11(a) of the Rules Governing 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "Before entering the final order, the court *may*

---

[4]Also before this Court is a Motion for Leave of Court, Request for Discovery and Motion to Appoint Counsel (Record Document 86); Motion to Expedite Consideration of Motion for Discovery, Motion to Appoint Counsel (Record Document 88); Motion to Stay All Proceedings, Motion for Leave to File Writ of Mandamus (Record Document 92); Motion to Proceed In Forma Pauperis on Appeal (Record Document 93) and Motion for Intervention (Record Document 103) all filed by Petitioner, Thomas Christie. As is the practice, any motion that may be pending relating to this matter is hereby denied as moot.

direct the parties to submit arguments on whether a certificate should issue." Rule 11(a) Rule Governing Section 2255 Proceedings for the United States District Courts (emphasis added). Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.

In this instance, a certificate of appealability is **DENIED** because the applicant has failed to demonstrate a substantial showing of the denial of a constitutional right.

An order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 11th day of April, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE